Jerome M. Reinan, #7-6208
LAW OFFICES OF J.M. REINAN, P.C.
1437 High Street
Denver, CO 80218
(303) 894-0383
(303) 894-0384 (FAX)
jreinan@reinanlaw.com

Diana Rhodes, Esq.  #5-2734
Traci Rivinus, #6-3920
Rhodes Law Firm, LLC
2015 Warren Ave.
Cheyenne, WY  82001
(307) 634-4444
diana@drhodeslaw.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## For the
## DISTRICT OF WYOMING

| | |
|---|---|
| **KRISTI GLEASON, as Special Administrator for The Estate of Manley Carter Plymell, Deceased,** | )<br>)<br>)<br>) |
| **Plaintiff,** | )<br>) |
| vs. | ) Civil Action No. _____ |
| **LIFE CARE CENTERS OF AMERICA, INC, a Foreign Corporation; WESTVIEW OPERATIONS, LLC, a Foreign Company, both d/b/a WESTVIEW HEALTHCARE CENTER,** | )<br>)<br>)<br>)<br>) |
| **Defendants.** | ) |

## COMPLAINT

Kristi Gleason, as Special Administrator for the Estate of Manley Carter Plymell, deceased, by and through the undersigned attorneys, Jerome M. Reinan, Law Offices of J.M. Reinan, P.C., and Diana Rhodes, Rhodes Law Firm, LLC, states for her Complaint as follows:

### I. PARTIES AND VENUE

1

1. Plaintiff Kristi Gleason has been appointed Special Administrator for the Estate of her father, Manley Carter Plymell, deceased. **Exhibit 1**. Plaintiff lives in Sheridan County, Town of Banner, Wyoming 82832. Plaintiff is a resident of Sheridan County, Wyoming.

2. At time relevant, Plaintiff's father, Manley Carter Plymell, "Mr. Plymell," resided at Westview Health Care Center, a skilled nursing facility owned and operated by Defendants Life Care Centers of America, Inc., a Corporation formed in Tennessee, and Westview Operations, LLC, a company formed in Tennessee.

3. As a result of the intertwined legal and factual relationship between Defendants Westview Operations, LLC and Life Care Centers of America, Inc., these two Defendants shall be collectively referred to as "Westview," which is the trade name used by these Defendants.

4. Upon information and belief, each of the Defendants was the agent, joint venturer, aider and abettor, alter ego and/or employee of each of the remaining Defendants and was acting within the course and scope of such agency, partnership, joint venture and/or employment or in the capacity of an aider and abettor or alter ego.

5. The events giving rise to this action occurred within Sheridan County, Wyoming.

6. The amount in controversy in this action, exclusive of interest and costs, exceeds the jurisdictional limit of $50,000.00.

7. A notice of claim was properly filed with the Medical Review Panel of the State of Wyoming pursuant W.S. § 9-2-1519. Following Defendants' waiver of the right to proceed before the Medical Review Panel on January 19, 2021, an order of dismissal was entered by the Medical Review Panel and is attached as **Exhibit 2**.

8. Pursuant to the Medical Review Panel Act, the order of dismissal provided Plaintiff with the availability of legal action and this Court has jurisdiction over this action.

9. Jurisdiction and venue are proper in this Court.

## II. STATEMENT OF FACTS

10. Plaintiff hereby incorporates each and every averment set forth herein as if each and every averment was set forth verbatim herein.

11. Mr. Plymell was admitted to Westview on March 29, 2017. At that time, Plaintiff was Mr. Plymell's responsible family member at Westview and its staff knew that Plaintiff was Mr. Plymell's responsible family member for all purposes of consultation and notification as required by state and federal nursing home regulations.

12. Mr. Plymell's admission to Westview in 2017 was the result of Mr. Plymell's dementia and inability to care for himself in a community setting.

13. Mr. Plymell weighed 163 lbs. at the time of admission to Westview.

14. As a result of Mr. Plymell's dementia and other conditions, Plymell was unable to advocate for himself and required the help and assistance of Westview staff with all of his activities of daily living, physician communications, family communications and advocacy for changes in his mental and physical condition.

15. From his admission until the end of November, 2018, Mr. Plymell was able to ambulate independently with the use of a walker. Up until the end of November, 2018, Mr. Plymell was also able to eat independently. From his admission until the end of November, 2018 Mr. Plymell was able to enjoy his surroundings, his fellow nursing home residents, and visits from his family members, including Plaintiff.

16. On or about November 30, 2018, Mr. Plymell fell and suffered an undiagnosed hip fracture while under the direct care and supervision of Defendants' staff.

17. Despite clear policies, procedures and regulations requiring that such falls be documented, investigated and reported to responsible family members, physicians and appropriate state authorities, nursing staff made the conscious decision, along with her employer, Westview, to conceal the facts concerning Mr. Plymell's fall from Plaintiff, Mr. Plymell's physicians and state authorities in order to avoid liability for causing or contributing to Mr. Plymell's hip-fracturing fall.

18. The November 30, 2018 fall and hip fracture caused Mr. Plymell to experience excruciating pain, the loss of the ability to ambulate and an abrupt overall decline in his physical and mental health.

19. Although Westview staff, including its administration, knew that Mr. Plymell's abrupt changes of condition and declines in health were more likely than not caused by a hip fracture, Westview made a conscious decision to avoid documenting these abrupt declines and changes in physical and in mental health in order to continue to cover up Mr. Plymell's fall and likely hip fracture in order to continue to try to avoid liability for that fall and the harm it caused.

20. Westview's conscious decision to cover up Mr. Plymell's fall with resultant undiagnosed and untreated hip fracture resulted in Mr. Plymell experiencing a great deal of pain and suffering from a delay in medical care.

21. Multiple Westview employees similarly violated Westview's policies and procedures as well as nursing home regulations and standards of care by consciously or negligently failing to document, report and investigate Mr. Plymell's fall and the obvious signs of a hip fracture, including substantial bruising in and around Mr. Plymell's right hip. Among other things:

- On December 1, 2018, Mr. Plymell required extensive assistance with transfers. He was not bearing weight on his right side. This change of condition was not investigated or reported.

- On December 2, 2018, Mr. Plymell required extensive assistance with transfers. This change of condition was not investigated or reported.

- On December 3, 2018, a Westview nurse conducted what was reported as a full skin assessment of Mr. Plymell. During the course of that skin assessment the nurse would have observed new, undocumented and extensive bruising to Mr. Plymell's right hip and would have had a duty to document the bruising, report the bruising to administration and initiated an investigation of the bruising if she had actually looked at Mr. Plymell's right hip. The nurse's failure to document these issues suggests that she either failed to conduct a skin assessment and thus fabricated a skin assessment, or did conduct the skin assessment but violated policies and procedures by failing to report and investigate the causes of the bruising.

- On December 4, 2018, Westview nursing staff noted a decline in Mr. Plymell's communication abilities. The CNA responsible for Mr. Plymell's care noticed bruising on the right hip and reported it to the charge nurse.. Despite this report to the charge nurse, there was no investigation into the cause of the hip bruise or the connection between the hip bruise and Mr. Plymell's loss of ambulation, pain, need for extensive assistance with transfers, loss of communication abilities and overall decline in function. This conduct also constituted a violation of Westview's policies and procedures as well as nursing home regulations and standards of care.

- On December 5, 2018, Mr. Plymell continued to need extensive assistance with transfers, which was a significant change in his normal level of functioning. Staff also noticed that Mr. Plymell required a speech therapy evaluation, pureed meals and thickened liquids due to his overall decline in functioning. The day shift nurse reported to the evening shift nurse that Mr. Plymell had a bruise on his hip. As before, Westview staff violated policies, procedures, regulations and standards of care by failing to investigate the cause of the hip bruising as well as the relationship between the hip bruising and Mr. Plymell's need for extensive assistance with transfers and significant decline in his overall level of functioning.

- On December 6, 2018, Mr. Plymell was noted by Westview staff to have increased confusion. Another report was made to a Westview nurse regarding a hip bruise found in the shower. A Westview nurse performed a skin assessment that did not seek to investigate the relationship between the skin bruising and the overall significant changes in Mr. Plymell's condition identified above.

- On December 7, 2018, a Westview nurse aide noticed that Mr. Plymell's right hip was significantly swollen and bruised. The bruise measured 7 cm x 3 cm and was light purple with an outside ring that as yellowish and green. The right leg was assessed as shorter than the left leg when Mr. Plymell was standing and Mr. Plymell was not able to bear weight on his right leg.

- On this date, the director of nursing and Mr. Plymell's daughter were for the first time notified of Mr. Plymell's probable hip fracture. Mr. Plymell was then transferred to the hospital.

22. Upon admission to Sheridan Memorial Hospital, "SMH," Mr. Plymell was immediately diagnosed with a displaced right hip fracture. Because of the delay in treatment and the overall and substantial decline in Mr. Plymell's mental and physical functioning caused by the hip fracture and the delay in treatment, a decision was made to not surgically repair the hip fracture. As a result, Mr. Plymell permanently lost his ability to walk and transfer without assistance. This in turn caused Mr. Plymell to suffer constant pain as well as a rapid, continuous decline in his overall cognitive and physical functioning.

23. Mr. Plymell was transferred back to Westview on December 9, 2018. After Mr. Plymell's readmission to Westview, Mr. Plymell was subjected to continuing acts of abuse and neglect. Among other things, according to the medical records:

- Mr. Plymell suffered from a painful and irritating eye condition that was not monitored, assessed or treated by Westview staff, despite Plaintiff's repeated complaints to Westview nurses and administration about these eye conditions.

- Mr. Plymell and Plaintiff were subjected to repeated acts of retaliation by Westview administration and staff for lodging complaints about Mr. Plymell's fall, hip fracture and delay in treatment.

- Among other things, Westview administration directed Westview staff, particularly nurse aides, to refuse to discuss Mr. Plymell's care, conditions or changes of condition with Plaintiff in violation of Westview policies, procedures and nursing home regulations. At least one nurse aide told Plaintiff that she would lose her job if she talked to Plaintiff about Mr. Plymell and his care issues. Another restorative aide told Plaintiff the same thing. Another nurse aide, who knew Plaintiff's daughter, was

reassigned to a different hall to prevent her from reporting Mr. Plymell's care to Plaintiff.

- Westview failed to monitor and address Mr. Plymell's weight loss. As a result of the injuries he suffered from the November 30, 2018 fall and his subsequent pain, Mr. Plymell began to lose weight. As a result of his weight loss and eating difficulties, Mr. Plymell was placed on an assisted dining table where he was to receive assistance with eating and monitoring of his intake.

- At or about this time, Westview's Director of Nursing left her employment with the facility, and Mr. Plymell was moved off of the assisted dining table and was forced to eat by himself and without assistance. When Plaintiff complained to Westview's Administrator about Plaintiff's need for assisted dining, the Administrator told Plaintiff that Mr. Plymell didn't need assistance with feeding, even though his weight was down to 132 lbs. – a more than 36 pound weight loss -- by that point.

- Upon information and belief, the Administrator's directive to take Mr. Plymell off of the assisted dining table was an act of retaliation and was unrelated to his actual nutritional needs.

24.     These direct acts of retaliation were initiated and ordered by Westview's Administrator and then-director of nursing, and constitute violations of Westview's policies and procedures, nursing home regulations and nursing home standards of care. These acts of retaliation prevented Mr. Plymell from receiving the care to which he was legally entitled and violated his rights to receive care in a safe environment free from retaliation.

25.     Mr. Plymell remained at Westview until May 2018, when he was transferred to another facility. Mr. Plymell passed away on August 8, 2019.

8

26. Following Mr. Plymell's hospitalization at SMH, the Sheridan Police Department ("SPD") investigated the facts and circumstances surrounding Mr. Plymell's November 30, 2018 fall incident.

27. As part of that investigation, the SPD interviewed Defendants' nurse, Nurse Butler, who admitted that she was present at the time of Mr. Plymell's fall.

28. Nurse Butler falsely told the SPD that Mr. Plymell started to fall during a physical assessment, but that she prevented Mr. Plymell's fall by giving him a "bear hug" and by gently lowering him to the floor.

29. Nurse Butler falsely told the SPD that Mr. Plymell did not strike the floor and could not have broken his hip as a result of that incident.

30. The SPD investigator concluded that Nurse Butler's statement was not credible. Among other things, the SPD investigator noted that Nurse Butler was small, frail, elderly and used a cane. The SPD concluded that it would not have been physically possible for Nurse Butler to have grabbed onto Mr. Plymell and gently lowered him to the floor as reported.

31. As a result of the acts and omissions described herein, Mr. Plymell was intentionally caused to suffer extended excruciating pain, emotional abuse, severe emotional distress, upset, loss of enjoyment of life, loss of function and loss of ability to independently perform activities of daily living. The amounts of these injuries will be determined by the jury at trial.

32. The actions of Defendants' conduct are willful and wanton misconduct, intentional, and in reckless disregard of the consequences to Mr. Plymell, and Defendants knew its conduct would, with certainty, result in harm to Mr. Plymell.

### III. FIRST CAUSE OF ACTION: NEGLIGENCE
### AGAINST ALL DEFENDANTS

9

33.     Plaintiff hereby incorporates each and every averment set forth herein as if each and every averment were set forth verbatim herein.

34.     Plaintiff, as Special Administrator of the Estate of Manley Carter Plymell, brings this survivor action against Defendants pursuant to the provisions of W.S. ¶ 1-4-101.

35.     Westview is a licensed nursing home in the State of Wyoming

36.     Mr. Plymell was a paying resident of Defendants' nursing home who, by and through its employees, had contractual and other duties to provide competent nursing and other care to Mr. Plymell as required by law and consistent with community standards.

37.     Defendants held themselves out to be specialists in the field of nursing care with the expertise to maintain the health and safety of persons unable to care for themselves, including Mr. Plymell.

38.     Based upon these standards, regulations and promises, Westview owed Mr. Plymell the following duties of due care, *inter alia*:

   a) A duty to reasonably supervise Mr. Plymell;

   b) A duty to report changes of condition to Plaintiff and Mr. Plymell's physicians;

   c) A duty to reasonably plan Mr. Plymell's care;

   d) A duty to use reasonable means to prevent Mr. Plymell from falling and injuring himself;

   e) A duty to report and investigate falls that result in injury;

   f) A duty to notify Plaintiff and Mr. Plymell's physicians of falls resulting in injury;

   g) A duty to document falls that result in injury;

      h) A duty to perform a comprehensive and thorough assessment of Mr. Plymell after a fall;

      i) A duty to communicate between staff members the fact of any changes of condition including falls resulting in injury;

      j) A duty to appropriately documents facts concerning falls that result in injury;

      k) A duty to refrain from concealing Mr. Plymell's fall injuries from others.

      l) A duty to seek prompt emergency medical attention;

      m) A duty to provide Mr. Plymell with adequate nutrition;

      n) A duty to avoid retaliating against Mr. Plymell for his or his family members' care complaints; and

      o) A duty to avoid covering up care that caused Mr. Plymell to suffer injuries.

39.   Westview breached these duties of due care by engaging in the acts and omissions described herein and by, *inter alia*:

      a) Failing to supervise Mr. Plymell;

      b) Failing to reasonably plan Mr. Plymell's care;

      c) Failing to notify Plaintiff and Mr. Plymell's physicians about Mr. Plymell's fall injury;

      d) Engaging in an intentional course of covering up Mr. Plymell's fall injury;

      e) Forcing Mr. Plymell to stand, bear weight and ambulate on his broken hip over several days;

      f) Failing to document Mr. Plymell's fall injury;

      g) Failing to investigate Mr. Plymell's fall injury;

      h) Failing to update Plymell's care plan;

i) Failing to use reasonable care to prevent Mr. Plymell from falling;

j) Failing to perform a thorough and comprehensive nursing assessment of Mr. Plymell after a fall;

k) Making intentionally false entries into Mr. Plymell's nursing home chart;

l) Intentionally covering up the facts and circumstances regarding Mr. Plymell's fall, fall injuries and fractured hip;

m) Intentionally refraining from documenting Mr. Plymell's fall injury;

n) Retaliating against Plaintiff and Mr. Plymell for complaining;

o) Failing to tend to Mr. Plymell's eye issues;

p) Intentionally violating nursing home regulations by instructing staff to refrain from communicating with Plaintiff about Mr. Plymell;

q) Failing to provide adequate nutrition for Mr. Plymell;

r) Failing to provide sufficient staff to care for Mr. Plymell; and

s) Failing to provide sufficiently trained staff to care for Mr. Plymell.

t) Engaging in a pattern and course of false and dishonest conduct causing Mr. Plymell to suffer injuries, damages and losses.

40. These negligent acts and omissions caused Mr. Plymell to suffer injuries, damages and losses as set forth in greater detail herein.

41. As a direct and proximate result of the above-mentioned conduct, all of which was negligent and substandard, Mr. Plymell was damaged as previously described in the complaint, and Plaintiff is entitled to damages as allowed under applicable Wyoming law.

42. The conduct of the Defendants, and each of them, was willful, wanton and a reckless disregard for the safety and well-being of its residents, including Mr. Plymell. Such

conduct is indicative of a reckless indifference for the health and safety of the residents at Defendants' facility.

## IV. SECOND CAUSE OF ACTION: NEGLIGENCE *PER SE* AGAINST WESTVIEW

43. Plaintiff hereby incorporates each and every averment set forth herein as if each and every averment were set forth verbatim herein.

44. Westview owed a non-delegable fiduciary duty to residents, including Mr. Plymell, to provide adequate financial and other resources to care for their residents and to hire, train, and supervise employees so that such employees would deliver care and services to residents in a safe and beneficial manner in order to assist and ensure that the residents attain and maintain the highest practicable level of physical, mental, and psychosocial well-being. The Defendants breached that duty.

45. Westview, at all times relevant hereto, failed to provide a sufficient number of trained, experienced and competent personnel; failed to provide appropriate care and supervision and safety for all patients and residents and failed to ensure that their needs were met and failed to ensure dignity, all in violation of the regulations for licensing of long-term care health facilities of both the Health Care Financing Administration, U.S. Department of Health and Human Services, 42 C.F.R. Part 483, and the Rules and Regulations for Licensure of Nursing Care Facilities of the Wyoming Department of Health, pursuant to the Health Facilities Act at W.S. §35-2-901 et seq. and the Wyoming Administrative Procedures Act at W.S. §16-3-101 et seq.

Among other things:

46. Defendants failed to comply with 42 C.F.R. §483.10, which states:

§483.10(b)(11)(i)(A) facility must immediately inform the resident; consult with the resident's physician; and if known, notify the resident's legal representative or an interested family member when there is-

(B) A significant change in the resident's physical, mental, or psychosocial status (i.e., a deterioration in health, mental, or psychosocial status in either life-threatening conditions or clinical complications);

(C) A need to alter treatment significantly (i.e., a need to discontinue an existing form of treatment due to adverse consequences, or to commence a new form of treatment).

47. Defendants failed to comply with 42 C.F.R. §483.20, which states:

§483.20(b) Comprehensive assessments-

(1) Resident assessment instrument. A facility must make a comprehensive assessment of a resident's needs, using the resident assessment instrument (RAI) specified by the State.

(2) …a facility must conduct a comprehensive assessment of a resident … (ii) Within 14 calendar days after the facility determines, or should have determined, that there has been a significant change in the resident's physical or mental condition.

§483.20(g) Accuracy of assessments. The assessment must accurately reflect the resident's status.

§483.20(d) Use. A facility must…use the results of the assessments to develop, review, and revise the resident's comprehensive plan of care.

§483.20(k) Comprehensive care plans.

(1) The facility must develop a comprehensive care plan for each resident that includes measurable objectives and timetables to meet a resident's medical, nursing, and mental and psychosocial needs that are identified in the comprehensive assessment.

48. Defendants failed to comply with 42 C.F.R. §483.25, which states:

§483.25(h) Accidents. The facility must ensure that – (1) The resident environment remains as free of accident hazards as is possible; and (2) Each resident receives adequate supervision and assistance devices to prevent accidents.

§483.25(g) Assisted nutrition and hydration. Based on a resident's comprehensive assessment, the facility must ensure that a resident –

(1) Maintains acceptable parameters of nutritional status, such as usual body weight or desirable body weight range and electrolyte balance, unless the resident's clinical condition demonstrates that this is not possible or resident preferences indicate otherwise;

(2) Is offered sufficient fluid intake to maintain proper hydration and health; and

(3) Is offered a therapeutic diet when there is a nutritional problem and the health care provider orders a therapeutic diet.

49. Defendants failed to comply with 42 C.F.R. § 483.30, which states:

§483.30 Nursing services. The facility must have sufficient nursing staff to provide nursing and related services to attain or maintain the highest

>practicable physical, mental, and psychosocial well-being of each resident, as determined by resident assessments and individual plans of care.

50. Defendants failed to comply with 42 C.F.R. § 483.35, which states:

>The facility must have sufficient nursing staff with the appropriate competencies and skills sets to provide nursing and related services to assure resident safety and attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident, as determined by resident assessments and individual plans of care and considering the number, acuity and diagnoses of the facility's resident population...

51. Defendants failed to comply with 42 C.F.R. §483.75, which states:

>§483.75(l) Clinical records. (1) The facility must maintain clinical records on each resident in accordance with accepted professional standards and practices that are - (i) Complete; (ii) Accurately documented; (iii) Readily accessible; and (iv) Systematically organized.

52. As a direct and proximate result of said violations of regulations, the risk of harm to residents of Defendants' facility, including Mr. Plymell, was foreseeable, and Mr. Plymell was exposed to risk of injury from mistreatment or neglect, and did in fact suffer such injury as a result thereof.

53. As a direct and proximate result of such negligence, gross negligence, flagrant, willful, wanton, reckless and/or intentional conduct, Mr. Plymell suffered injuries that were foreseeable to Defendants.

54. Defendants' violation of the above stated regulations is negligence *per se*.

55. As a direct and proximate result of Defendants' negligence *per se*, Plaintiff is entitled to damages for medical expenses, together with all other damages allowed under applicable Wyoming law.

## V. THIRD CAUSE OF ACTION: RESPONDEAT SUPERIOR

56. Plaintiff hereby incorporates each and every averment set forth herein as if each and every averment were set forth verbatim herein.

57. Based upon contract and agreement, apparent authority and agency, Westview is legally or vicariously responsible for the actions of the nurses, staff, employees and agents of Westview.

58. Westview is vicariously liable for any and all negligence of its nurses, staff, agents and employees under the doctrine of respondeat superior.

59. Westview was therefore negligent in the healthcare rendered to Mr. Plymell.

60. As a result of the negligence of Westview, its administrators, management, nurses, staff, agents and employees, Plaintiff is entitled to damages for all damages allowed under Wyoming law.

61. Plaintiff seeks recovery for damages caused by the negligence of the Defendants, their agents, servants and employees, including but not limited to pecuniary loss, pain and suffering of Manley Plymell, reasonable medical expenses of Manley Plymell and such other damages as are compensable under Wyoming law.

WHEREFORE, Plaintiff requests that judgment be entered in her favor and against each and all of the Defendants, for damages in such amount a trier of fact determines to be just and proper; for exemplary damages for Defendants' willful, wanton, reckless and/or intentional

misconduct and to dissuade them and others similarly situated from engaging in similar misconduct in the future; for costs of the action; and for post judgment interests, costs, and other such and further relief as the court deems just and proper under the circumstances.

## JURY DEMAND

Kristi Gleason, as Special Administrator for the Estate of Manley Carter Plymell, deceased, by and through counsel undersigned attorneys, Jerome M. Reinan, Law Offices of J.M. Reinan, P.C., and Diana Rhodes, Rhodes Law Firm, LLC, hereby demands a trial of all issues herein by a jury of six (6) persons.

RESPECTFULLY SUBMITTED this 10th day of March, 2021.

*/s/ Diana Rhodes*

Jerome M. Reinan, #7-6208
The Law Offices of J.M. Reinan, P.C.
1437 High Street
Denver, CO 80218

Diana Rhodes, Esq. #5-2734
Traci Rivinus, #6-3920
Rhodes Law Firm, LLC
2015 Warren Ave.
Cheyenne, WY 82001

*Attorneys for Plaintiff*